

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**03/22/2010**

| | | |
|---|---|---|
| IN RE: | § | |
| CALTEX HOLDINGS LP | § | CASE NO: 09-31875 |
|     Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| MECHANICAL & ELECTRICAL | § | |
| CONCEPTS, INC. | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 09-3145 |
| | § | |
| CALTEX HOLDINGS LP | § | |
|     Defendant(s) | § | |

## <u>MEMORANDUM OPINION</u>

### I.    FACTS

In September of 2007, Mechanical Electrical Concepts, Inc. ("MEC") offered to buy a large number of sliding "drawer type" storage cabinets and dividers (the "Cabinets") from the Debtor, CalTex Holdings, LP ("CalTex" or "Debtor") for $100 each. It is undisputed that this offer was accepted, at least in part – money was delivered to Cal-Tex, and Cal-Tex delivered 19 of the cabinets to MEC, which then accepted delivery.

What is in dispute, however, is the number of Cabinets that were to be purchased and delivered to MEC. CalTex admits that is has approximately 164 of these Cabinets in its possession, but denies that they were subject to the original agreement. MEC asserts that it delivered a check for $20,000 for payment of the first 200 cabinets, which CalTex admits it cashed. Despite this fact, CalTex argues that it never agreed to the terms of a contract for the remaining cabinets. Though CalTex initially cashed the check, it attempted to return the funds to MEC in October 2007. MEC refused to cash the returned check, and subsequently made demand for delivery of "the remaining" storage cabinets or the payments of $106,000 plus additional fees as damages. *See* Docket #23 – 7.

On December 08, 2008 MEC filed suit against CalTex in the 165th Judicial District of Harris County, Texas for breach of contract, seeking either specific performance (delivery of the remaining Cabinets) or damages of $106,000 (Docket #23-8).

On March 20, 2009, CalTex filed its chapter 11 petition, initiating the underlying bankruptcy case (09-31875). MEC filed its complaint initiating the instant adversary proceeding on April 9, 2009, asserting essentially the same claims it asserts in the state court proceeding.

On April 24, 2009, MEC filed an amended proof of claim (Claim No. 5-2), asserting a "secured" claim in the amount of $124,000, but attached no documentation in support of its claim.

On July 10, 2009 the Trustee was appointed as the chapter 11 trustee (docket #298, Case No. 09-31875) and on November 17, 2009, the case was converted to chapter 7 (docket # 403, Case No. 09-31875).  The chapter 11 Trustee was subsequently appointed as the interim chapter 7 Trustee (the "Trustee").

## II.     LEGAL ARGUMENTS

On February 1, 2010, the Trustee filed his Motion for Partial Summary Judgment (docket # 17), seeking summary judgment determining that (i) MEC is not entitled to the remedy of specific performance; and (ii) any damages caused by the Debtor's alleged breach of contract and/or conversion of property constitute an unsecured claim against the Debtor's bankruptcy estate.

In essence, the Trustee argues that Plaintiff merely has a "claim" in bankruptcy.

On February 8, 2010, MEC filed its own Motion for Partial Summary Judgment (docket # 21) seeking (i) a determination that CalTex breached its contract, (ii) a determination that because CalTex "converted" the MEC's Cabinets, MEC has obtained equitable title, and that title passed to MEC prior to CalTex's petition date.  MEC also argues that it has a right to specific performance, or damages in the amount of $117,650.  (See footnote 2 of MEC's motion for summary judgment that computes the damages.)

## III.     ANALYSIS

a.     *No equitable title exists because the Cabinets cannot be specifically identified.*

The Trustee is correct that under Texas law that "in order to recover on a theory of conversion one must at the time of the conversion either have some character of ownership interest in the specific property converted or be in legal possession of it or then entitled to its possession." *Mack v. Newton*, 737 F.2d 1343, 1355 (5th Cir. 1984) (citing *Catania v. Garage De Le Paix, Inc.,* 542 S.W.2d 239, 242 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.)("A plaintiff who has not shown title or some other right to possession of the property allegedly converted may not maintain a suit for conversion); *Lone Star Beer, Inc. v. Republic Nat. Bank of Dallas*, 508 S.W.2d 686, 687 (Tex.Civ.App.—Dallas, 508 S.W.2d 686, 687 (Tex.Civ.App.—Dallas 1974, no writ)("In order to recover on a theory of conversion, it is necessary that … [the plaintiff] allege and prove one of three things, that being, that it is the owner of the property converted or that it had legal possession of the property so taken or that it is entitled to possession.")).

However, under certain circumstances, Texas law will recognize equitable title in order to remedy a fraud or breach of fiduciary obligation. To establish equitable title, Plaintiff must allege and prove a contract of sale or the elements necessary to establish a constructive trust. By creating a constructive trust, Texas law will recognize equitable title in order to remedy a fraud or breach of fiduciary obligation:

> Under Texas law, a constructive trust is not actually a trust, but rather an equitable remedy imposed by law to prevent unjust enrichment resulting from an unconscionable act. The two circumstances that generally justify the imposition of a constructive trust are actual fraud and the breach of a confidential or fiduciary relationship. We have summarized the elements of a constructive trust under Texas law as (1) breach of a fiduciary relationship or, in the alternative, actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing of the property to an identifiable res.

In re *Monnig's Dep't Stores,* 929 F.2d at 201; *see also Rosenberg v. Collins,* 624 F.2d 659, 663 (5th Cir.1980) (holding that, under Texas law, a constructive trust can attach only "**to some identifiable property** which can be traced back to the original property acquired by fraud") (emphasis added). However, a "constructive trust" is not simply a roving commission to do equity.[1]

Based on the evidence attached to the motions for summary judgment, the responses, and the motion to amend (docket #24) it is not clear that the parties had an understanding as to the exact number of Cabinets that were to be purchased and delivered. In addition, there is no indication, or argument, that these Cabinets were unique or readily identifiable – 200 Cabinets out of a thousand. Because no specific identification of the Cabinets exists in the agreement, and because delivery of any of the Cabinets in CalTex's possession could have satisfied the agreement, it is impossible to trace the un-delivered cabinets to the funds that were delivered. Accordingly, because the Cabinets cannot be traced equitable title did not pass to MEC.

b.  *The result is the same whether MEC has a right to specific performance or a claim for damages. – either is an unsecured claim in bankruptcy.*

The term "claim" means:

> **(A)** right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> **(B)** right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C.A. § 101(5).

---

[1] A wonderful phrase used in another context in *U.S. v. Sutton* 786 F.2d 1305 (5th Cir. 1986).

The definition of "claim" also includes a breach of an equitable right to performance which gives rise to a right of payment. COLLIER ON BANKRUPTCY ¶ 101.05[5]. The intended result is that a liquidation or estimation of a contingent right of payment for which there may be an alternative remedy makes the equitable claim dischargeable in bankruptcy. *Id.*

Assuming MEC is correct that an enforceable contract exists and that CalTex breached that contract, if the Court finds that MEC is entitled to specific performance or a claim for damages, the result is same: MEC has an unsecured claim in a bankruptcy case.

If there were a contract of sale that could be enforced, by asking for specific performance MEC is essentially conceding that the contract is substantially and materially unperformed by CalTex. The Bankruptcy Code classifies such a contract as an executory contract which Debtor can reject, Bankruptcy Code 365.[2] Breach of executory contracts give rise to an unsecured claim against the estate, Bankruptcy Code § 101(5)(B).

### IV.  SUPPLEMENT

The Court has considered docket # 24, MEC's motion to supplement its summary judgment evidence. The two affidavits that MEC proposes to add to the summary judgment evidence do not change the preceding analysis; in fact, they support the result reached below. The affidavits state that there was a contract for the purchase of 1,000 cabinets for $100,000, if Cal-Tex had 1,000 cabinets. Because Cal-Tex apparently does not have 1,000 cabinets, one must conclude that there was no binding contract because the condition (*i.e.* that there must be 1,000 cabinets) was not satisfied.

### V.  CONCLUSION

For reasons set forth above, by separate order issued this date, (i) the Trustee's Motion for Partial Summary Judgment (docket #17) is GRANTED, (ii) MEC's Motion for Partial Summary Judgment (docket #21) is DENIED, and (iii) MEC has an unsecured claim for $117,650.

SIGNED 03/22/2010.

_Wesley W. Steen_
Wesley W. Steen
United States Bankruptcy Judge

---

[2] *See also* Countryman, *Executory Contracts in Bankruptcy*, 57 Minn. L. Rev. 439, 446 (1973).